IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 2, 2019

## STATE OF TENNESSEE v. TAVARIS MARKEE GOLDEN

**Appeal from the Circuit Court for Madison County**
**No. 17-604   Donald H. Allen, Judge**

_____

### No. W2018-01956-CCA-R3-CD
_____

A Madison County Circuit Court Jury convicted the Appellant, Tavaris Markee Golden, of aggravated assault, a Class C felony, employing a firearm during the commission of or attempt to commit a dangerous felony, a Class C felony, and attempted voluntary manslaughter, a Class D felony, and he received an effective twelve-year sentence. On appeal, the Appellant contends that the trial court erred by refusing to merge the attempted voluntary manslaughter conviction into the aggravated assault conviction and that the merger would have negated his conviction of employing a firearm during the commission of a dangerous felony and the six-year sentence he received for the offense. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Tavaris Markee Golden.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

In November 2017, the Madison County Grand Jury indicted the Appellant for attempted first degree premeditated murder, aggravated assault with a deadly weapon, and employing a firearm during the commission of or attempt to commit a dangerous

felony.[1]  In April 2018, a jury convicted him of attempted voluntary manslaughter as a lesser-included offense of attempted first degree murder, aggravated assault, and employing a firearm during the commission of or attempt to commit a dangerous felony.[2] Although the Appellant does not contest the sufficiency of the evidence, we will briefly summarize the proof presented at trial.

On December 25, 2016, the victim, Charles Bommer, was at a family gathering outside his mother's house in Jackson.  About 5:20 p.m., the Appellant came to the house in his Chevrolet Tahoe to pick up one of Bommer's sisters, who was the Appellant's girlfriend.  The Appellant and the victim had previously had "some trouble."  The victim approached the Tahoe and told the Appellant to leave because the Appellant was trespassing.  The Appellant got out of his Tahoe, took a shotgun out of the back of the vehicle, and shot the victim in the stomach.  The Appellant then returned the shotgun to the Tahoe and drove away.  The victim denied spitting in the Appellant's face or hitting him prior to the shooting.

A family member transported the victim to Jackson General Hospital.  The victim was in "grave" condition when he arrived, and the doctor who treated him in the emergency room did not expect him to survive.  The victim had multiple surgeries and spent a couple of months in the hospital.

The police arrested the Appellant in Columbia four or five days after the shooting and interviewed him on December 30, 2016.  During the interview, the Appellant claimed that he shot the victim because he thought the victim had a gun and because he was afraid of the victim.  He also claimed that the victim spit on him and punched his face before the shooting.  One of the police officers who conducted the Appellant's interview saw what appeared to be a tooth impression on the inside of the Appellant's cheek.  On cross-examination, the officer testified that the Appellant's injury "looked like it would line up with his teeth" and that the injury could have resulted from a fist punching the Appellant's face.

After the jury convicted the Appellant, the trial court held a sentencing hearing and imposed a sentence of six years for aggravated assault, a Class C felony, six years for employing a firearm during the commission of or attempt to commit a dangerous felony, a Class C felony, and four years for attempted voluntary manslaughter, a Class D felony. The trial court ordered that the Appellant serve the six-year sentence for employing a

---

[1] The indictment specified attempted first degree murder as the "dangerous felony."  See Tenn. Code Ann. § 39-17-1324(i)(1)(A).

[2] Attempted voluntary manslaughter also is a "dangerous felony."  See Tenn. Code Ann. § 39-17-1324(b)(2), (i)(1)(C).

firearm during the commission of or attempt to commit a dangerous felony consecutive to the other two sentences for a total effective sentence of twelve years.

## II. Analysis

The Appellant contends that the trial court erred by refusing to merge the conviction of attempted voluntary manslaughter into the conviction of aggravated assault because he committed only one act. He further contends that the merger would have negated his conviction of employing a firearm during the commission of or attempt to commit a dangerous felony and the six-year sentence he received for the offense because aggravated assault is not a "dangerous felony" under Tennessee Code Annotated section 39-17-1324(i)(1). The State argues that the trial court did not err. We agree with the State.

The double jeopardy clauses of the United States and Tennessee Constitutions protect an accused from (1) a second prosecution following an acquittal; (2) a second prosecution following conviction; and (3) multiple punishments for the same offense. See State v. Watkins, 362 S.W.3d 530, 541 (Tenn. 2012). The instant case concerns the third category, protection against multiple punishments for the same offense in a single prosecution. "Multiple punishment claims fall into one of two categories: (1) unit-of-prosecution claims; or (2) multiple description claims." State v. Hogg, 448 S.W.3d 877, 885 (Tenn. 2014) (citing Watkins, 362 S.W.3d at 543). The "threshold inquiry" in multiple description claims is whether the dual convictions arose from the same act or transaction. State v. Itzol-Deleon, 537 S.W.3d 434, 441-42 (Tenn. 2017). If so, a double jeopardy violation may exist.

"It is well settled in Tennessee that, under certain circumstances, two convictions or dual guilty verdicts must merge into a single conviction to avoid double jeopardy implications." State v. Berry, 503 S.W.3d 360, 362 (Tenn. 2015) (order). "Whether multiple convictions violate double jeopardy is a mixed question of law and fact that we review de novo with no presumption of correctness." State v. Smith, 436 S.W.3d 751, 766 (Tenn. 2014).

The State acknowledges that the convictions arose from the same act or transaction but argues that the trial court properly refused to merge the convictions. In support of its argument, the State relies on State v. Feaster, 466 S.W.3d 80 (Tenn. 2015). In that case, the defendant beat the victim, with whom he had been living, so severely that she remained unconscious for three days. Feaster, 466 S.W.3d at 82. A jury convicted him of attempted voluntary manslaughter as a lesser-included offense of attempted first degree murder and convicted him of aggravated assault, and the trial court refused to merge the convictions. Id. at 83. A divided panel of this court affirmed the

defendant's convictions and sentences, but one member of the panel dissented in part and concluded that the trial court should have merged the convictions pursuant to double jeopardy principles. Id. On appeal to our supreme court, the supreme court ruled that the defendant's convictions did not violate double jeopardy principles because each of the offenses contained elements that the other did not and because there was no evidence that the legislature intended to prohibit multiple punishments in such circumstances.

Like Feaster, the jury in this case convicted the Appellant of attempted voluntary manslaughter as a lesser-included of attempted first degree murder and convicted him of aggravated assault. Furthermore, both of the convictions arose out of the same incident. "Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). Relevant to this case, criminal attempt occurs when a person "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense. Tenn. Code Ann. § 39-12-101(a)(3). As charged in the indictment, aggravated assault occurs when a person intentionally or knowingly causes bodily injury to another and uses or displays a deadly weapon. Tenn. Code Ann. § 39-13-101(a)(1), -102(a)(1)(A)(iii). Both of the offenses contain elements that the other does not, and there is no evidence that the legislature intended to prohibit multiple punishments in such circumstances. Accordingly, we must conclude that the Appellant's dual convictions do not violate double jeopardy.

Given that the trial court properly refused to merge the convictions, we find no need to address the Appellant's claim that the merger would have negated his conviction and six-year sentence for employing a firearm during the commission of or attempt to commit a dangerous felony.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE

- 4 -