IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 31, 2021

**STATE OF TENNESSEE v. MARQUES D. WHEELER**

**Appeal from the Criminal Court for Knox County**
**No. 112881   G. Scott Green, Judge**

_____

**No. E2020-01163-CCA-R3-CD**

_____

Defendant, Marques D. Wheeler, was indicted by the Knox County Grand Jury for two counts of unlawful possession of a weapon and one count of reckless homicide. Pursuant to a negotiated plea agreement, Defendant pleaded guilty to reckless homicide and received an agreed-upon sentence of ten years for his conviction with the manner of service of his sentence to be determined by the trial court. The trial court dismissed Defendant's unlawful possession of a weapon charges.[1] Following a sentencing hearing, the trial court denied Defendant's request for split confinement and ordered Defendant to serve his sentence incarcerated. Defendant appeals. Upon review, we affirm the judgment of the trial court but remand the matter for entry of a judgment form for count two.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal); Michael Graves, Maryville, Tennessee (at trial), for the appellant, Marques D. Wheeler.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Charme P. Allen, District Attorney General; and Mitch Eisenberg, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

---

[1] The technical record does not contain a judgment form dismissing count two. On remand, the trial court should enter a judgment form dismissing this count. *See State v. Berry*, 503 S.W.3d 360, 364-65 (Tenn. 2015).

The record on appeal does not contain a transcript of Defendant's guilty plea submission hearing. Regarding the facts underlying Defendant's conviction, the presentence report, which was admitted as an exhibit to Defendant's sentencing hearing, states that on January 1, 2018, at approximately 12:15 a.m., Defendant was the backseat passenger in a vehicle driven by Dominick Brown. The victim, Kayla Buyers[2], was the front seat passenger. According to Ms. Brown, they were riding around Market Square when Defendant began playing with a .22 caliber handgun. He accidentally fired the gun, and it struck the victim in the back. They drove the victim to Children's Hospital, which was the closest emergency room. The victim died from the gunshot wound.

Patricia Wheeler, Defendant's mother, testified at the sentencing hearing that the incident had affected Defendant in that "his mind is [ ] not the same[,]" and he had attempted suicide since the incident. Ms. Wheeler testified that Defendant was "not a bad kid at all. He just got with the wrong crowd." She apologized and expressed her sympathy for the victim's family.

The victim's aunt, Tiajuania Easter, testified that the victim had four children who were "split up" and placed in different homes after their mother's death. She testified that the children had suffered "great emotional trauma." Ms. Easter read from her own victim impact statement: "[W]hen you[, Defendant,] murdered my niece, you basically took my sister and her grandchildren with you."

Ms. Easter also read victim impact statements from the victim's children. The victim's youngest daughter wrote that she missed her mother and her mother was her "everything." The victim's son wrote that he and his siblings no longer lived together and that it had made "life difficult for all of us." He wrote, "[i]t is hard to think that we won[']t get to see her for the rest of our lives." Ms. Easter testified that Defendant's actions "destroyed the lives of all four of these children." She urged the trial court to hold Defendant "responsible for taking out a woman that was raising four children." Ms. Easter testified, "if you murder somebody, . . . our system is supposed to prosecute them and put them away[, n]ot on probation. Who murders somebody and gets put on probation?"

Becky Buyers, the victim's mother, testified that Defendant had "destroyed the entire family, our whole entire family." She testified that the victim was her "best friend." Ms. Buyers acknowledged that Defendant took the victim to the hospital, but she testified that Defendant "could've helped" her, but instead, he left her there to die "by herself." She

---

[2] The indictment identifies the victim as "Kayla Viars," however, the transcript of the sentencing hearing states that the victim's name was "Kayla Buyers."

testified that the victim's children were "so angry and so mad every day we have to go through this[.]" She testified, "I wake up and I beg God every night to take me because the pain is so bad, and there's nothing to wake up to. I've not been happy since the day I lost my baby. Kayla was everything to me. Not only my daughter, she was everything, really everything. And you took that."

Defendant gave a statement in allocution. He apologized to the victim's family and his family "for this terrible situation." Defendant expressed his regret for not being able to save the victim's life. Defendant stated "that will forever haunt me."

The presentence report showed that Defendant had at least eight prior misdemeanor convictions and one prior felony conviction. Defendant was on probation for a DUI conviction at the time of the offenses in this case. As a result of the charges in this case, his probation was revoked. Following service of his sentence for his DUI conviction and while on bond for the offenses in this case, Defendant was charged with evading arrest and driving with a suspended license. Defendant also tested positive for amphetamine, methamphetamine, and morphine while he was awaiting sentencing in this case.

Following argument by the parties, the trial court gave the following findings and conclusions:

> All right. I'll agree with [defense counsel] on one point, that this truly is a tragedy.
>
> Defendant, there's nothing in this record that suggests to me that this was a deliberate act, that you took a gun, aimed it at the back of this young lady, pulled the trigger and killed her –
>
> . . . .
>
> – but that doesn't change the fact, sir, that she is no less dead because of your actions.
>
> . . . .
>
> You were prohibited by law from owning or possessing a firearm by virtue of your prior felony conviction. That's not my rule, that is a violation of not only state law but federal law as well for you to own or possess a firearm after a felony conviction. You did. You took the gun when it was handed to you, and whether you were playing around with it and it went off, or it just went off accidentally as you were trying to unload it and unchamber

a round, it makes no difference. You were prohibited by law from handling that weapon.

But then the Court has to look at some other factors here. Not only is the enormity of what happened here that this young lady lost her life, but these four young kids are going to have to grow up without a momma because of your actions as well. This started out with a tragedy, you were a party to this tragedy, you were the one holding the gun when it went off and this young lady died, but that occurred while you were on probation.

And after you were released on this case, you picked up other charges. You picked up an evading arrest. Running from the police while you were on release in this very case.

After that occurred, you were taken into custody in this court because you consumed narcotic drugs without a prescription. Now, that doesn't suggest to me that you've got very good prospects of succeeding on probation.

What I'm trying to say, [Defendant], is this, this Court after reading everything in this case and judging the entirety of this record was inclined to know what I was going to do at sentencing, but you've made my decision a lot easier with your actions.

The trial court ordered Defendant to serve his ten-year sentence in confinement. Defendant filed a timely notice of appeal.

### *Analysis*

On appeal, Defendant asserts that the trial court abused its discretion by ordering him to serve his ten-year sentence in confinement. The State responds that the record supports the trial court's denial of an alternative sentence.

When a trial court denies probation or any other alternative sentence to an eligible defendant and states on the record reasons that are in accordance with the purposes and principles of sentencing, the court's decision is reviewed under an abuse of discretion standard, accompanied by a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If the trial court fails to articulate the reasons for denying an alternative sentence, the "abuse of discretion standard with a presumption of reasonableness" does not apply on appeal and an appellate court can either conduct a de novo review to determine whether there is an

adequate basis for denying probation; or (2) remand for the trial court to consider the requisite factors in determining whether to grant probation. *State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013).

As we noted above, the record on appeal does not include the transcript of the guilty plea submission hearing. It is the appellant's responsibility under Tennessee Rule of Appellate Procedure 24(b) to prepare a record adequate for an appellate court to address the issues on appeal. *Caudle*, 388 S.W.3d at 279. Even without the transcript of the guilty plea submission hearing, however, we determine that the record is sufficient for a meaningful review. *See id*. (stating that "the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in *Bise*").

Defendant was eligible for an alternative sentence of probation or split confinement because the sentence imposed was ten years or less and because reckless homicide was not included in the offenses statutorily excluded from eligibility. T.C.A. § 40-35-303(a) (2020); § 39-13-401 (2020). A defendant is not required to file a petition for probation. *Id*. § 40-35-303(b). Probation must be automatically considered by the trial court as a sentencing alternative for eligible defendants. *Id*. A defendant who is eligible for probation has the burden of establishing his or her suitability for probation. *Id*. § 40-35-303(b).

When a trial court orders confinement and therefore rejects any form of alternative sentencing such as probation, split confinement, or periodic confinement, it must base the decision to confine the defendant upon the considerations set forth in Code section 40-35-103(1), which provides:

> (1) Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1). Additionally, the sentence imposed should be the least severe measure necessary to achieve its purpose, and the defendant's potential for rehabilitation, or lack thereof, should be considered when determining whether to grant alternative sentencing. T.C.A. § 40-35-103(4) and (5). Trial judges are encouraged to use alternative sentencing when appropriate. T.C.A. § 40-35-103(6).

Defendant argues that the trial court failed to make express findings concerning whether confinement was necessary to restrain Defendant when Defendant's "conduct contributing to the victim's death in this case was accidental." Defendant also argues that the trial court failed to make findings regarding how confinement would serve as a deterrent to others "from accidental criminal conduct." Defendant acknowledges that his previous attempts at probation were unsuccessful, but he asserts that "his remorse for the consequences in this case would serve to improve his behavior in future endeavors on probation."

The trial court explicitly found that "it made no difference" whether Defendant was "playing around with [the gun] and it went off, or it just went off accidentally as [Defendant] was trying to unload it and unchamber a round," because Defendant was a convicted felon in possession of a weapon in violation of the law. The trial court explained that while the shooting may have been accidental, the shooting would not have occurred had it not been for Defendant's actions in unlawfully possessing the weapon.

The trial court considered Defendant's criminal record, both prior to and since the charges in this case, including previous probation violations, and the court concluded that Defendant was unlikely to succeed on probation. The record supports this finding. The presentence report showed that Defendant had violated his probation on more than one occasion and was on probation when he committed the offense in this case.

The trial court clearly articulated reasons for denying an alternative sentence that were in accordance with the purposes and principles of sentencing. The trial court's imposition of a sentence of incarceration is compliant with the purposes and principles of sentencing. Defendant's lack of potential for rehabilitation alone supports denial of full probation. Accordingly, Defendant is not entitled to relief in this appeal.

CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed. However, the matter is remanded to the trial court for entry of a judgment form dismissing count two.

_____
TIMOTHY L. EASTER, JUDGE