IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 4, 2025

**STATE OF TENNESSEE v. ALEC BYRON HARRISON**

**Appeal from the Circuit Court for Hardin County**
**No. 20-CR-204      J. Brent Bradberry, Judge**

_____

**No. W2024-00869-CCA-R3-CD**

_____

The defendant, Alec Byron Harrison, pled guilty to aggravated statutory rape. After a sentencing hearing, the trial court ordered the defendant to serve a three-year sentence in confinement with the Tennessee Department of Correction. On appeal, the defendant contends the trial court erred in sentencing the defendant to confinement. Upon our review of the applicable law, the record on appeal, and the parties' briefs, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and TOM GREENHOLTZ, JJ., joined.

Larry Samuel Patterson, Jr., Columbia, Tennessee, for the appellant, Alec Byron Harrison.

Jonathan Skrmetti, Attorney General and Reporter; Ryan Dugan, Assistant Attorney General; Neil Thompson, District Attorney General; and Morgan Reynolds, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On March 27, 2023, the defendant entered a guilty plea to aggravated statutory rape, with sentencing to be determined by the trial court.[1] The facts underlying the plea revealed that on September 29, 2020, the defendant engaged in sexual intercourse with a fifteen-

---

[1] The defendant was also indicted for rape, which the State dismissed pursuant to a plea agreement with the defendant.

year-old girl.  In the six months prior to the incident, the victim and the defendant became acquainted and began communicating through social media.  During that time, the victim sent messages and photographs of herself to the defendant, as well as began visiting the defendant's place of employment, a farm, to help care for the animals.  On the day of the assault, the victim's mother drove the victim to the farm and asked the defendant to drive the victim home at the end of the day.  Rather than driving the victim straight home at the end of the day, the defendant drove the victim to a secluded area of the farm where a sexual encounter occurred that involved fondling, oral and penile penetration.  Afterwards, the defendant drove the victim home.

On May 13, 2024, a sentencing hearing was held.  During the hearing, a presentence report and a psychosexual evaluation were entered into evidence.  The defendant's presentence report indicated the defendant lacked a significant prior criminal record and did not have a history of substance abuse.  The defendant had also achieved a high school diploma and was self-employed in various jobs.  However, the presentence report made note of the defendant's "superficial" acceptance of responsibility for his behavior and, ultimately, categorized the defendant with a moderate risk of reoffending.

A psychosexual evaluation of the defendant was also performed.  The report found that the defendant "placed primary responsibility upon the minor female victim for initiating sex and sexual conversation through sharing of sexual images," and noted the defendant's belief that the sexual encounter with the victim was consensual.  It also mentioned that the defendant believes "females will say things just to get men into trouble. . . . They do things then they regret it and look for a way not to be blamed or held for their actions."  In conclusion, the report rated the defendant's risk for sexual recidivism as "average."

Additionally, a Vermont Assessment of Sex Offender Risk was performed.  This report assessed the defendant as a "low" risk of reoffending based upon several factors, including his lack of criminal history and substance abuse.

At the hearing, the victim's mother, Angela Beasley, gave a victim impact statement.  Ms. Beasley described having two conversations with the defendant in which she asked for assurances that the defendant would not touch the victim.  Ms. Beasley also testified that the defendant knew the victim was fifteen years old.  Finally, Ms. Beasley requested the trial court impose a "significant" sentence upon the defendant, stating that the victim has not "just went on happily on her merry way and neither have we."

The defendant chose not to testify on his own behalf but did make a statement of allocution and remorse following the arguments of counsel.

- 2 -

Following testimony and argument from counsel, the trial court stated it had considered the evidence presented during the hearing, including the presence report, the Vermont Assessment of Sex Offender Risk, the psychosexual evaluation, the argument of counsel, and the victim's impact statement. The trial court also applied two enhancement factors: (7) the crime was committed for sexual gratification and (14) the defendant violated a position of trust. As a result, the trial court imposed a sentence of three years.

In considering alternative sentencing, the court noted that the defendant's lack of criminal record and his history of abiding by the court's requirements while on bond weighed in favor of granting probation. However, the trial court also found that the "interest of society being protected from [the defendant]" and the defendant's belief that the encounter with the victim was consensual weighed against probation. Lastly, the trial court stated, "for me to allow you to walk out that door today would tell the citizens of Hardin County that it's okay to have sex with someone that is sixteen years old and ten years younger than you are, and the Court is not willing to do that." As a result, the trial court ordered the defendant to serve his three-year sentence in confinement.

This timely appeal followed.

*Analysis*

On appeal, the defendant challenges the trial court's sentencing determination of three years in confinement. Specifically, the defendant contends the trial court erred in basing its denial of probation "solely upon the belief that granting probation would depreciate the seriousness of the offense." The State maintains the trial court acted within its discretion, basing its sentencing determination not only on the need to protect against the depreciation of the seriousness of the offense, but also on the seriousness and facts of the offense. We agree with the State.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; (8) the result of the validated risk and needs assessment conducted by the department and contained in the presence report; and (9) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id.* § 40-35-210(c). Although the nature of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter,* 254 S.W.3d 335, 345 (Tenn. 2008).

Generally, probation is available to a defendant sentenced to ten years or less. Tenn. Code Ann. § 40-35-303(a). A defendant who is convicted as an especially mitigated or standard offender of a Class C, D, or E felony is considered a favorable candidate for probation. Tenn. Code Ann. § 40-35-102(6)(A). In determining whether incarceration is appropriate, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C). Additionally, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(4), (5).

A trial court's decision to grant or deny probation is reviewed under an abuse of discretion standard with a presumption of reasonableness when the sentence reflects the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d at 278-79. "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). The burden

of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* Tenn. Code Ann. § 40-35-303(b); *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

Here, because the sentence imposed upon the defendant was ten years or less, he was eligible for probation. Tenn. Code Ann. § 40-35-303(a). In compliance with Tennessee Code Annotated section 40-35-103(1)(B), the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense or that confinement is particularly suited to provide an effective deterrence to others likely to commit similar offense. "When a trial court relies solely on confinement factor (B) in determining that confinement is the appropriate sentence, then the circumstances of the offense as committed, must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring probation." *State v. Bottoms*, 87 S.W.3d 95, 103 (Tenn. Crim. App. May 31, 2001) (quoting *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991) (internal quotation marks omitted)).

During the sentencing hearing, the trial court stated that it reviewed the evidence, the presentence report, the risk assessments performed, arguments from counsel, and the victim impact statement by the victim's mother. Further, the trial court stated on the record the applicable enhancement factors: (7) the offense was committed to gratify the defendant's desire for sexual pleasure or excitement and (14) the defendant had abused a position of trust. *See* Tenn. Code Ann. § 40-35-114. The trial court then imposed a mid-range sentence of three years.

In determining whether to sentence the defendant to serve in confinement or on probation, the trial court recognized that the defendant's possibility to successfully complete probation was "great." However, the trial court ultimately found the facts and circumstances of the offense outweighed that possibility, primarily the defendant's continued assignment of blame for committing the offense to the minor victim and the presentence and psychosexual reports' classifying the defendant as an average or moderate risk to reoffend. Contrary to the defendant's claim, the trial court did not solely rely upon the need to avoid depreciating the seriousness of the offense in its determination to deny probation as it clearly weighed the facts and circumstances of the offense.

It is clear from the record that the trial court applied the purposes and principles of sentencing and weighed the enhancement factors before imposing a sentence of confinement. Because the trial court's sentence was within range and levied in compliance

with the purposes and principles of sentencing, there is no error.  Therefore, we conclude the trial court acted within its discretion in denying alternative sentencing and imposing a sentence of full confinement.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.


s/ J. ROSS DYER                                    _
J. ROSS DYER, JUDGE